**UNITED STATES DISTRICT COURT FOR THE**
**CENTRAL DISTRICT OF CALIFORNIA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **ROBERT A. SALERNO AND** | § | **CIVIL ACTION NO:** |
| **LAURA SALERNO** | § | |
| | § | |
| | § | |
| *Plaintiffs* | § | |
| | § | |
| **v.** | § | |
| | § | |
| **GRAND DESIGN RV, LLC AND** | § | |
| **MIKE THOMPSON RECREATIONAL** | § | |
| **VEHICLES** | § | |
| | § | |
| *Defendants* | § | **JURY TRIAL REQUESTED** |

**COMPLAINT**

**I.    Parties**

1.      Plaintiffs, **ROBERT A. SALERNO** and **LAURA SALERNO**, now and have been at all times material hereto citizens of the State of California.

2.      Defendant, **GRAND DESIGN RV, LLC**, hereinafter  "GRAND DESIGN," is a Indiana limited liability company with its principal place of business in the State of Indiana and authorized to do and doing business in the State of California whose agent for service of process is Corporation Service Company, 2710 Gateway Oaks Drive, Suite 150N, Sacramento, CA 95833.

3.      Defendant, **MIKE THOMPSON RECREATIONAL VEHICLES**, hereinafter "MIKE THOMPSON," is California corporation with its principal place of business in the State of California and authorized to do and doing business in the State of California whose agent for service of process is Frank B. Degelas, 18240 Ward Street, Fountain Valley CA 92708-6800.

-1-

## II.    Jurisdiction

4.    This Court has federal question jurisdiction over the lawsuit under the Magnuson-Moss Warranty Act pursuant to 15 USC § 2310(d); and 28 USC § 1331 in that the disputes involve predominant issues of federal law.

Declaratory relief is available pursuant to 28 USC §§ 2201 and 2202. The court has supplemental jurisdiction under 28 USC § 1367 over Plaintiffs' state law claims because said claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article 3 of the United States Constitution.

## III.    Venue

5.    Venue is proper in this district under 28 U.S.C. §1391(a)(3) because the Defendants are subject to personal jurisdiction in this district and there is no other district where the suit may be brought.

## IV.    Conditions Precedent

6.    All conditions precedents have been performed or have occurred.

## V.    Facts

### A.    The Transaction

7.    On August 21, 2017, Plaintiffs purchased a new 2017 GRAND DESIGN SOLITUDE MODEL 360RL bearing VIN 573FS4129H1106974, hereinafter "SOLITUDE," from MIKE THOMPSON.  The SOLITUDE was purchased primarily for Plaintiffs' personal use.  The sales contract was presented to Plaintiffs at the dealership and was executed at the dealership.

8.    The sales price of the SOLITUDE was $72,359.75, excluding finance charges. Plaintiffs made a down payment in the amount of $6,700.00.  The total cost of the vehicle to

-2-

Plaintiffs including finance charges will be over $150,000.00. Civil or Punitive penalties for breach of warranty are recoverable under the Warranty Act, if they are recoverable for breach of warranty under the applicable state law.   See ***Hughes v. Segal Enterprises, Inc.,*** 627 F. Supp. 1231, 1238 (W.D. Ark. 1986); ***Chariton Vet Supply, Inc. v. Moberly Motors Co.***, 2:08CV47MLM, 2009 WL 1011500 (E.D. Mo. Apr. 15, 2009).

## B.    Implied Warranties

9.    As a result of the sale of the SOLITUDE by Defendants to Plaintiffs, an implied warranty of merchantability arose in the transaction which included the guarantee that the SOLITUDE would pass without objection in the trade under the contract description; and that the SOLITUDE was fit for the ordinary purpose for which such motor vehicles are purchased.

10.    Subsequent to the sale, an implied warranty arose in connection with the repairs performed by the Defendants.  Specifically, the Defendants impliedly warranted that the repair work had been performed in a good and workmanlike manner.

## C.    Express Warranties

11.    In addition to the implied warranties that arose in the transaction, certain representations and express warranties were made, including, that any malfunction in the SOLITUDE occurring during a specified warranty period resulting from defects in material or workmanship would be repaired, and that repair work on the SOLITUDE had, in fact, repaired the defects.

12.    Plaintiffs' purchase of the SOLITUDE was  accompanied by express warranties offered by Defendants, GRAND DESIGN, and extending to Plaintiffs.  These warranties were part of the basis of the bargain of Plaintiffs' contract for purchase of the SOLITUDE.

13.    The basic warranty covered any repairs or replacements needed during the warranty period due to defects in factory materials or workmanship.  Any required adjustments would also be made during the basic coverage period.  All warranty repairs and adjustments, including parts and labor, were to be made at no charge.  Additional warranties were set forth in the GRAND DESIGN's warranty booklet and owners manual.

### D.    Actionable Conduct

14.    In fact, when delivered, the SOLITUDE was defective in materials and workmanship, with such defects being discovered within the warranty periods.  Many defective conditions have occurred since purchase, including, but not limited to the following as described in Plaintiffs' own words:

**"My wife Laura and I decided to go looking for a brand new Fifth Wheel in August of 2017. My parents were babysitting my 7 year old daughter so we had the rare opportunity to go shopping together. Mike Thompson's RV in Fountain Valley CA is only two miles from my home so that was our first stop.**

**In the past my wife and I have purchased a trailer from Mike Thompson's as well as my parents and coworkers of mine from the Fire Department.**

**On this particular day August 21st 2017 we found our 2017 Solitude 360RL Fifth Wheel trailer on the dealer lot. After a long day we obtained the financing through the dealership and made the deal this day. The dealership held the Fifth Wheel for us and prepped it for a few weeks because we were going out of town.**

**We took delivery in September 2017.  I should add after the fourth attempt to take delivery in September 2017 due to the unit not functioning correctly. They had to make multiple repairs before we actually drove it off the lot. They never actually fixed everything they said they were going to fix either. Mainly this was an issue with the front of the Fifth Wheel having to do with decals peeling. They actually chiseled the sticker off the front and chipped the fiberglass. They promised to fix the chip, scratches, replace the decal and they never did.**

**When we finally got our new Fifth Wheel home we noticed lots of little defects**

for example our front entry door did not close properly when the trailer was
level. It hits the upper left corner of the door jam so hard the paint is missing
from both the jamb and the door itself. Our shower leaked water all over the
bathroom floor and they never did fix the damage they created on the front cap
of our brand new Fifth wheel.

With Christmas 2017 coming soon we stored our Fifth Wheel at the indoor
facility we keep it in and made an appointment with Mike Thompson's RV in
March of 2018. They made me wait a month due to their busy schedule. When
I brought it in I asked them to fix the following: Leaking hydraulic jack, leaking
shower, my front entry door, and the decal, chipping, and scratches on the
front.

After dropping it off I let two weeks go by before attempting to call them
because I know they are busy. I was told "we are working on it". After four
weeks I drove to the dealership in person to inquire. The representative in the
service department Robert Knudsen said he didn't know anything. I walked out
to the lot to try and find it myself and he followed me. We both found it in the
back of their lot parked behind two other trailers dirty with the rear jack
hanging off the back and oil dripping. The look on Robert Knudsen's face was
that of shock! I asked him to fix it now and he said pick it up tomorrow.

The next day I showed up he said the hydraulic jack, shower leak, and front
door had been fixed. He also tried to sell me solar panels which he said could be
installed in one day for a few thousand dollars. They never attempted to fix the
chipping and scratches on the front of the fifth wheel or replace the decal.

On April 5th 2018 my family and I decided to use the fifth wheel only to find out
the front entry door had not been fixed, the shower had not been fixed, the front
cap chips and scratches had not been fixed. I decided to call out a licensed
mobile repair person and a professional detailer to try and diagnose/repair the
problems and this is when many issues came to light.

Both the detailer and licensed mobile repairman asked me "when this thing had
been hit"? I said it never was to my knowledge, I bought it brand new. They
pointed out the entire right side of the Fifth Wheel had overspray paint, the
front entry door had been repainted as well, as the door jam with overspray on
the black weather stripping. The front cap on the unit has visible clear coat drip
marks dried into the paint and there are areas of dried paint drips indicating
lot of paint and repair work had been done. But the most troubling issue is that
there is actually "bondo" on the passenger side of the trailer with a large crease
in the fiberglass with a halo mark around the bondo. This indicated the unit was
hit hard by something and repaired. You can see the discoloration and what will

come is more discoloration and dry rot.

I took the Fifth Wheel to a licensed RV repair shop Orange Coast Auto Body in Fountain Valley to confirm my fears. Shop Manager Farrell Ellis did confirm everything and more. Mr Ellis pointed out the damage all over the unit and much more that I had never found myself. He confirmed it had been hit and hard and that bondo was present. While he did provide a list of the damage he found, he did not provide a price for repair because he said "you don't even want to know how much it would be". None of this was ever disclosed to my wife and I and from the time we picked it up in September we have been making payments on both the fifth wheel and storage facility where we store it.

On Tuesday April 10th, I called Robert Knudsen at the Mike Thompson's Service Department. I explained the situation and he had no answer as to why they didn't fix the previous issues while it was there for a month. He said there was no record of any repairs or damage to my unit before I purchased it. He blamed the damage on Grand Design where the unit was made. I then called Grand Design in the state of Indiana. I spoke with a manger named Joe. He said he had no record of anything that happened to my unit at their facility. He told me I had to deal with the dealership directly because it was their problem.

In summary, I feel I was deceived by Mike Thompson's RV in Fountain Valley CA. My wife and I work very hard to provide for our family and buying a Fifth Wheel is an expensive Purchase for anyone. The least one would expect from a dealer when buying a brand new Fifth Wheel is complete honesty and zero deception especially when is comes to not disclosing extensive damage to such an expensive unit. My wife and I are very upset with the situation in its entirety and would like the dealership to take responsibility."

15.    Since purchase, Plaintiffs have returned their SOLITUDE to Defendants and authorized warranty service dealers for repairs on numerous occasions.  Despite this prolonged period during which Defendants were given the opportunity to repair the SOLITUDE, the more significant and dangerous conditions were not repaired.  Defendants failed to repair the vehicle so as to bring it into conformity with the warranties set forth herein.  From the date of its purchase, the SOLITUDE continues to this day to exhibit some or all of the non-conformities described herein.

16.    The defects experienced by Plaintiffs with the SOLITUDE substantially impaired its

use, value and safety.

17.    Plaintiffs directly notified the Defendants and each of him of the defective conditions of the SOLITUDE on numerous occasions.  Plaintiffs notified Defendants that she wanted a rescission of the sale of the SOLITUDE but Defendants has failed and refused to buy back Plaintiffs' defective SOLITUDE.

## VI.    Causes of Action

## COUNT 1:  VIOLATIONS OF THE SONG-BEVERLY CONSUMER WARRANTY ACT, CIVIL CODE SECTION 1790 ET SEQ.

18.    Plaintiffs re-allege and incorporate by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

19.    The vehicle is a consumer good as defined under the Song-Beverly Consumer Warranty Act.

20.    Plaintiffs are a "purchaser" of consumer goods as defined under the Song-Beverly Consumer Warranty Act.

21.    Defendant,  GRAND DESIGN,  is a "manufacturer" and "distributor" as defined under the Song-Beverly Consumer Warranty Act.

22.    The sale of the vehicle to Plaintiffs was accompanied by an express written warranty.

23.    The serious non-conformities have manifested themselves within the applicable express warranty period. The non-conformities substantially impair the use, value and or safety of the vehicle and/or can cause serious bodily injury or death.

24.    Plaintiffs brought the vehicle to  an authorized repair facility for repairs on numerous occasions in attempts to have the existing express warranties satisfied.

-7-

25.     Defendants have not repaired the non-conformities after a reasonable number of attempts and, as such, have failed to comply with and have breached all applicable warranty requirements.

26.     Further, the sale of the vehicle to Plaintiffs was accompanied by implied warranties that the vehicle was merchantable and fit for a particular use.

27.     Defendants have breached the implied warranties of merchantability and fitness for a particular use because the vehicle when sold would not pass without objection in the trade.

28.     Despite its breach of the express and implied warranties, Defendants has refused Plaintiffs' demand for a refund or replacement.

29.     By failure of Defendants to remedy the defects as alleged above, or to issue a refund or replacement, Defendants are in breach of their obligations under the Song-Beverly Consumer Warranty Act.

30.     Defendants' continuing breach of its obligations as set forth herein is willful pursuant to the Song-Beverly Consumer Warranty Act and as such, Defendants are liable to Plaintiffs for civil penalties in an amount as set forth below.

31.     Plaintiffs are entitled to recover a sum equal to the aggregate amount of costs and expenses, including attorney's fees, if Plaintiffs prevail.  As a proximate result of Defendants' misconduct as alleged herein, and in an effort to protect their rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Plaintiffs to employ the legal services of Richard C. Dalton.  Plaintiffs have incurred and continue to incur legal fees, costs and expenses in connection therewith.

**COUNT 2:    VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT**

32.    Plaintiffs re-allege and incorporates by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

33.    Plaintiffs are "consumers" as defined in the Magnuson-Moss Warranty Act (hereinafter "Warranty Act"), 15 U.S.C. § 2301(3).

34.    Defendant, GRAND DESIGN, is a "supplier" and "warrantor" as defined in the Warranty Act, 15 U.S.C. § 2310(4) and (5).

35.    The SOLITUDE, hereinabove  described is a "consumer product", as defined in the Warranty Act, 15 U.S.C. § 2301(l), because it is normally used for personal purposes and Plaintiffs in fact purchased it wholly or primarily for personal use.

36.    The express warranties more fully described hereinabove pertaining to the SOLITUDE is a "written warranty" as defined in the Warranty Act, 15 U.S.C. § 2301(6).

37.    The actions of Defendants, in failing to tender the SOLITUDE to Plaintiffs free of defects and refusing to repair or replace the defective SOLITUDE tendered to Plaintiffs constitute a breach of the written and implied warranties covering the SOLITUDE and hence a violation of the Magnuson-Moss Warranty Act.

38.    Plaintiffs have performed all things agreed to and required of it under the purchase agreement and warranty, except as may have been excused or prevented by the conduct of the Defendants as herein alleged.

39.    As a direct and proximate result of the acts and omissions of Defendants and each of them as set forth hereinabove, Plaintiffs have been damaged hereinabove in an amount in excess of $150,000.00.

40.     Pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(2), Plaintiffs are entitled to recover as part of the judgment, costs and expenses of the suit including attorney's fees based on actual time expended.  As a proximate result of the misconduct of Defendants as alleged herein, and in an effort to protect their rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Plaintiffs to employ the legal services of Richard C. Dalton.  Plaintiffs have incurred and continue to incur legal fees, costs and expenses in connection therewith.

**COUNT 3:     BREACH OF EXPRESS WARRANTIES**

41.     Plaintiffs re-allege and incorporates by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

42.     The Defendants' advertisements and statements in written promotional and other materials contained broad claims amounting to a warranty that Plaintiffs' SOLITUDE or those similarly situated were free from inherent risk of failure or latent defects.  In addition, the Defendants issued an expressed written warranty which covered the SOLITUDE and warranted that the SOLITUDE was free of defects in materials and work quality at the time of delivery.

43.     As alleged above, the Defendants breached its warranties by offering for sale, and selling as safe to Plaintiffs, an SOLITUDE that was latently defective, unsafe, and likely to cause economic loss to Plaintiffs.

44.     In breach of the foregoing warranties, the Defendants has failed to correct said defects.

45.     The damages Plaintiffs have suffered are a direct and proximate result of Defendants' actions in this matter include, but are not limited to, diminution in value of the vehicle; costs of

1  repairs; expenses associated with returning the vehicle for repeated repair attempts; loss of wages;

2  loss of use; damages; and attorney fees.

3

4                    **COUNT 4:    BREACH OF IMPLIED WARRANTIES**

5       46.    Plaintiffs re-allege and incorporates herein by reference each and every allegation set

6  forth in the preceding paragraphs.

7       47.    The Defendants impliedly warranted that Plaintiffs' SOLITUDE, which it designed,

8

9  manufactured, and sold, were merchantable and fit and safe for its ordinary use, not otherwise

10 injurious to consumers, and would come with adequate safety warnings.

11      48.    Any purported limitation of the duration of the implied warranties contained in the

12

13 written warranties given by Defendants is unreasonable and unconscionable and void under the

14 principles of estoppel, because Defendants knew the defects existed and might not be discovered,

15 if at all, until the SOLITUDE had been driven for a period longer than the period of the written

16 warranty, and Defendants willfully withheld information about the defects from Plaintiffs.

17      49.    Because of the defects, Plaintiffs' SOLITUDE is unsafe and unfit for use and has

18

19 caused economic loss to the Plaintiffs.  Therefore, the Defendants breached the implied warranty of

20 merchantability.

21      50.    The damages Plaintiffs have suffered are a direct and proximate result of Defendants'

22

23 actions in this matter include, but are not limited to, diminution in value of the vehicle; costs of

24 repairs; expenses associated with returning the vehicle for repeated repair attempts; loss of wages;

25 loss of use; damages; and attorney fees.

26               **COUNT 5:    NEGLIGENCE AND NEGLIGENT MISREPRESENTATION**

27      51.    The Defendants had a duty to Plaintiffs to provide a product reasonably safe in design

28

-11-

and manufacture, warn of dangerous defects, disclose adverse material facts when making representations of fact to Plaintiffs and correct products which are defective.

52.    The Defendants breached its duty of reasonably care and duty to disclose material adverse facts to Plaintiffs by the following acts and omissions:

a.    Failure to design and manufacture a SOLITUDE that did not harbor the defects alleged herein;

b.    Failure to notify Plaintiffs of the dangerous and defective condition of the SOLITUDE when Defendants knew or should have known of the dangerous and defective condition;

c.    Failure to fulfill its duty to disclose the material adverse facts as set forth above and otherwise failing to exercise due care under the circumstances; and

d.    Failure to repair the SOLITUDE in accordance with the express and implied warranties.

53.    The damages Plaintiffs have suffered are a direct and proximate result of Defendants' actions in this matter include, but are not limited to, diminution in value of the vehicle; costs of repairs; expenses associated with returning the vehicle for repeated repair attempts; loss of wages; loss of use; damages; and attorney fees.

**COUNT 6:    BREACH OF CONTRACT**

54.    Plaintiffs re-allege and incorporates herein by reference each and every allegation set forth in the preceding paragraphs.

55.    Plaintiffs would show that the actions and/or omissions of Defendants described herein above constitute breach of contract, which proximately caused the direct and consequential damages to Plaintiffs described herein below, and for which Plaintiffs  hereby sues.

56.    The damages Plaintiffs have suffered are a direct and proximate result of Defendants' actions in this matter include, but are not limited to, diminution in value of the vehicle; costs of

repairs; expenses associated with returning the vehicle for repeated repair attempts; loss of wages; loss of use; damages; and attorney fees.

## COUNT 7: FRAUD, INTENTIONAL MISREPRESENTATION, CONCEALMENT AND CONSPIRACY

57.    Plaintiffs re-allege and incorporates herein by reference each and every allegation set forth in the preceding paragraphs.

58.    Plaintiffs are informed and now believe and on that basis allege that the Defendants had actual or constructive notice of the falsity of their statements.

59.    Plaintiffs are informed and now believe and on that basis allege that the Defendants, misrepresentation and/or suppression of the truth was made with the intention to obtain an unjust advantage. Specifically, the Defendants filed to disclose the subject vehicle's prior accident or damage history to the Plaintiffs because had they done so the Plaintiffs would not have purchased the subject vehicle.

60.    Plaintiffs are informed and now believe and on that basis allege that the representations made by Defendants to the Plaintiffs prior to the sale were material to the transaction and were, in fact, false and misleading.

61.    Plaintiffs are informed and now believe and on that basis allege that the Defendants made these representations and affirmative omissions or concealment with the intent to defraud and induce Plaintiffs to purchase the SOLITUDE.

62.    Plaintiffs are informed and now believe and on that basis allege that at the time Plaintiffs purchased the SOLITUDE, they did not know, or have reason to know, that the Defendants were making false and misleading representations, nor did they know or have reason to know the true facts with regard to the condition of the SOLITUDE.

-13-

63.     Plaintiffs are informed and now believe and on that basis allege that Plaintiffs acted in justifiable reliance upon the truth of the representations which mislead them as to the nature and extent of the facts concealed and the Plaintiffs would not have purchased the subject vehicle.

64.     Plaintiffs are informed and now believe and on that basis allege that as a proximate result of Defendants' conduct, Plaintiffs have suffered actual damages, including incidental and consequential damages.

65.     Plaintiffs are informed and now believe and on that basis allege that but for Defendants' fraud, Plaintiffs would not have incurred these damages.

66.     Plaintiffs are informed and now believe and on that basis allege that in doing the acts alleged herein, Defendants acted with malice, oppression and fraud toward Plaintiffs.

67.     Plaintiffs are informed and now believe and on that basis allege that the Defendants conspired with each other to commit the aforementioned acts of fraud and caused Plaintiffs' damages as alleged herein.

**VII.    Economic and Actual Damages**

68.     Plaintiffs sustained the following economic and actual damages as a result of the actions and/or omissions of Defendants described herein above:

    a.      Out of pocket expenses, including but not limited to the money paid towards the note securing the vehicle;

    b.      Loss of use;

    c.      Loss of the "benefit of the bargain";

    d.      Diminished or reduced market value; and

    e.      Costs of repairs.

-14-

### VIII.    Damages for Civil Penalties

69.    Plaintiffs would further show false, misleading and deceptive acts, practices and/or omissions described herein above were committed willful pursuant to the Song-Beverly Consumer Warranty Act and as such, Defendants and each of them are liable to Plaintiffs for civil penalties in an amount as set forth below.

70.    As a result of such acts, practices and/or omissions, Plaintiffs sustained a high degree of mental pain and distress of such nature, duration and severity that would permit the recovery of damages for mental anguish pursuant to Song-Beverly Consumer Warranty Act, and for which Plaintiffs hereby sues for a civil penalty in an amount of two times Plaintiffs' actual damages

### IX.    Request for Rescission

71.    Plaintiffs seek a damages remedy as an alternative to the remedy of rescission which is requested in the following paragraph.

72.    Plaintiffs revoke their acceptance of the SOLITUDE for the reason that its defects substantially impair its value to Plaintiffs and acceptance was based on Plaintiffs' reasonable reliance on the false representations and warranties of Defendants that the defects in the SOLITUDE would be repaired.  Accordingly, Plaintiffs seek a cancellation of the automobile  purchase transaction and an order of the court restoring to him the money obtained by Defendants as a result of the false representations and breaches of warranty set forth above.  Plaintiffs also seeks cancellation of the debt and now offers to return the automobile to Defendants.

### X.    Attorney Fees and Costs

73.    Plaintiffs are entitled to recover as part of the judgment, costs and expenses of the suit including attorney's fees based on actual time expended.  As a proximate result of the misconduct

-15-

of Defendants as alleged herein, and in an effort to protect their rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Plaintiffs to employ the legal services of Richard C. Dalton.  Plaintiffs have incurred and continue to incur legal fees, costs and expenses in connection therewith.

## XI.    Prayer

74.    For these reasons, Plaintiffs pray for judgment against the Defendants for the following:

a.    For general, special and actual damages according to proof at trial;

b.    Rescinding the sale of the  2017 GRAND DESIGN SOLITUDE MODEL 360RL VIN  573FS4129H1106974and returning to Plaintiffs the purchase price including all collateral costs at the time of the sale, any and all finance charges, insurance premiums, maintenance costs, repair costs, and damages;

c.    For incidental and consequential damages according to proof at trial;

d.    Out of pocket damages for expenditures related to any cost of repairs, deductibles; and towing charges.

e.    Any diminution in value of the SOLITUDE attributable to the defects;

f.    Past and future economic losses;

g.    Prejudgment and post-judgment interest;

h.    Damages for loss of use of vehicle;

I.    Civil Penalties and/or Punitive damages;

j.    Damages for mental anguish;

k.    Attorney fees;

l.    Costs of suit, expert fees and litigation expenses; and

m    All other relief this Honorable Court deems appropriate.

-16-

**XIII.    Demand for Jury Trial**

70.    Plaintiffs hereby demands trial by jury to the extent authorized by law.

RESPECTFULLY SUBMITTED:

BY: /s/ *Richard C. Dalton*

Richard C. Dalton
Texas Bar No. 24033539
Louisiana Bar No. 23017
California Bar No. 268598
1343 West Causeway Approach
Mandeville, Louisiana 70471
E-mail: rickcdalton@outlook.com
Tel. (985) 778-2215
Fax: (985) 778-2233

ATTORNEY FOR PLAINTIFFS